CLAYTON & KENNADY, plaintiffs in error, vs. FRANCIS O'CONNER, defendant in error.

[1.] *Clayton & Kennady vs. O'Conner,* 29 *Ga. R.,* 687, affirmed.
[2.] The owner of a promissory note on an insolvent  person who, by a fraud, put its off on an innocent purchaser, is liable to refund to  the latter the money received for it, with interest.

Case.    In Richmond Superior Court.    Tried before Judge HOLT.    November Term, 1860.

This was an  action of deceit in  the sale of a note to the plaintiffs  by the defendant.

The note was as follows :

"AUGUSTA, GA., Oct. 8th, 1856.

Ninety days after date I  promise to pay to  the order of D. T. Smith  eight hundred dollars, at either bank in this city.    Value received.

(Signed)            JOHN C. CARMICHAEL."

Endorsed thus :   " D. T. Smith."

*Evidence for the Plaintiffs.*

*A. W. Walton*—Lived with plaintiffs as book-keeper, on the 4th of December, 1856. Defendant came into the store of plaintiffs on that day, between 12 o'clock M. and 2 o'clock P. M. and offered to sell them a note on John C. Carmichael, payable to the order of D. T. Smith, and indorsed by Smith in blank, for $800. Said note was dated October 8th, 1856, and was payable ninety days after date. After some conversation, John J. Clayton, one of the plaintiffs, told witness to draw a check on the Mechanics Bank for $762 50. Clayton told defendant to indorse the note. Defendant answered, in a jocular manner, and just as he was going out, that his name would make the note no better; that Carmichael was as good as any man in the city of Augusta, and would pay the note at maturity. Defendant took the check and left the store. Plaintiffs learned, a little while after, on the same day, that Carmichael had failed. Defendant lives in South Carolina. Plaintiffs sent to the bridge and elsewhere to intercept the defendant before he got over the river, but did not find him. The check was paid by the Mechanics Bank. Two or three days after, plaintiffs sent witness over to see defendant, who lives seven or eight miles from Augusta, to return him the note, get his endorsement upon it, or the money. Witness offered to return the note to defendant and take back the money, or keep the note with defendant's endorsement. Defendant would not assent to either of these arrangements. Witness told defendant that Carmichael had failed at the time the note was passed, and it was worthless. Defendant replied that he did not make child's bargains.

*Cross-Examined*—The note was turned over to L. D. Lallerstedt, Esq., by the plaintiffs, to be put in suit, and was in his hands at maturity. Witness did not call on Carmichael for payment; does not know that Carmichael was ever called upon. Carmichael failed two or three days before the sale of the note, but his failure was not generally known. Plaintiffs did not know of it until an hour or two after the trade.

Witness considers the note worthless; neither Carmichael nor Smith, the indorser, is solvent. Carmichael was in good credit, and did a large business, up to the time of his failure. Plaintiffs had dea't in paper with his indorsement at a discount before. They had some on hand at that time, but it was subsequently arranged by the makers. Witness heard Kennady, one of the plaintiffs, say he had met defendant in the street. When defendant said Carmichael was as good as any man in the city, the agreement was already made and the check drawn. Witness is not certain whether the check had been delivered to defendant or not. Kennady, one of the plaintiffs, was approaching defendant when the remark was made.

*L. D. Lallerstedt*—Thought that Carmichael was insolvent at the time of the trade. His opinion was formed on the fact that he was a Bank director, and had heard it said at the Bank and in the street that Carmichael was insolvent. [Counsel for defendant moved to rule out this testimony, on the ground that the opinion of the witness was not competent evidence on the direct examination, and especially so when founded on facts themselves inadmissible in evidence. The Court overruled the objection, and the witness proceeded.] Defendant came into the store of witness the morning of the 4th of December, 1856, and offered to sell him the note in evidence. Witness told defendant that Carmichael had failed, and the note was worthless. Defendant left and went down town.

*Cross-examined*—The note was put into the hands of witness for collection by Kennedy & Clayton some time subsequent to the day just mentioned. Witness heard of the failure of Carmichael two or three days previous to the 4th of December, 1856. His failure was not generally known. Witness knows of no payments made by Carmichael since his failure. He was in good credit previous to his failure. Witness did not present the note to him for payment. The note was due about the 9th of January, 1857. D. T. Smith was held to bail, and attachments issued, and garnishments

were served on several persons, under the statute in such case made and provided. Garnishments were served, witness thinks, on the firm of auctioneers who sold the stock in trade of D. T. Smith. The garnishees answered that they had nothing in their hands belonging to D. T. Smith. Smith kept a drug-store. Witness thinks his stock was worth $3,000 or $4,000. Witness called upon Smith in the latter part of December, 1856, to make arrangements to have the note paid. Smith refused to make any arrangements. The note was not due at that time. Smith was held to bail, but absconded before the maturity of the note. Witness looked about for defendant at the maturity of the note, but heard he had gone away ten days previously.

*Charles J. Goodwin*—Was a clerk in the store of Lallerstedt & Deming on the 4th of December, 1856. The morning of that day defendant came into the store and walked to the back part of it, where Lallerstedt was sitting, and offered to sell him a note on Jno. C. Carmichael. Lallerstedt told him (defendant) that Carmichael had failed, and the note was worthless. After some conversation, defendant left and went away.

*James P. Allen*—Lived with D. T. Smith on the 4th of December, 1856, as book-keeper and salesman. Does not believe that Smith was solvent, among other reasons, because he went away, leaving several debts unpaid. Witness has not much opinion of him.

*Cross-examined*—Smith bought about $1,200 of his stock at Sheriff's sale two or three months before the 4th of December, 1856, and paid cash for it. Then he went North and bought more stock, which, witness thinks, he did not pay for. He sold his stock on the 27th of December, 1856, and received about $4,000 for it. Up to that time he had sold to the amount of $1,800 or $2,000. He claimed some negroes—a boy and a woman—that belonged to his wife. Witness thinks the boy was worth $3,000 and the woman $800. Smith gave security for his board when he first came; got married shortly afterwards, which gave him some credit.

He ran away and left his wife behind. He owed money to hundreds of persons. Witness can specify only two of these, and can specify no amount.

*E. Starnes, Esq.*—Believes at this time that Carmichae was insolvent on the 3d of December, 1856. Witness had occasion professionally to become acquainted with Carmichael's affairs, and found them very much embarrassed. Witness was not prepared to say that it was his opinion, on the 3d of December, 1856, that Carmichael was insolvent. Carmichael made an assignment of his property on that day.

*Cross-examined*—Witness held large claims against Carmichael at that time. In connection with professional brethren who held other claims, he attacked the assignment as fraudulent; all the claims were paid in full, principal, interest and cost, by the assignees. The opinion of witness is that, in order to have made indorser of the note in evidence responsible, the note should have been put in bank and protested for non-payment, and demand should have been made of the indorser.

*John C. Sneed, Esq.*—Received from Philadelphia an account and note against D. T. Smith. At the time of their receipt they were not due. The aggregate of both was between $800 and $1,000. Witness did not succeed in collecting either. Both were sent back.

### Evidence for Defendant.

*Thomas Whyte*—Was a member of the firm of Girardy, Whyte & Co., on the 27th of December, 1856. Said firm sold the stock of D. T. Smith, and turned over to Smith $4,000. No garnishment was served on the firm. They may have been served upon some individual of the firm.

*Cross-examined*—Smith had some small accounts with the firm of Girardy, Whyte & Co., all of which he paid. Witness has seen Smith several times with large rolls of bank bills.

*James H. Gray*—Collected $1,200 from D. T. Smith on a note for that amount, bearing the same date and payable at
13

the same time as the one in evidence. Witness was the agent of defendant, and loaned two thousand dollars, this present claim and $1,200. Witness took a mortgage on Smith's stock for the $1,200, and assigned it to the auctioneers who sold said stock. The $1,200 was paid by the check of Girardy, Whyte & Co., on account of Smith. Witness believed, on the 4th of December, 1856, that Smith was solvent, and witness was in the habit of lending him money, in amount from $100 to $300. Sometimes took his due bill—sometimes did not.

*Cross-examined*—Defendant is a money lender.

*John K. Jackson, Esq.*—Was counsel for creditors of John C. Carmichael. From information of facts acquired by witness in that transaction, witness is of the opinion that Carmichael was not fairly insolvent on the 4th of December, 1856. Witness did not think so then, and does not now. When D. T. Smith was held to bail by plaintiffs the firm of Millers & Jackson were retained by Smith. Witness was a member of that firm, and as such, proceeded to the defence of that case. Before the trial Term, Smith disappeared before arranging for fees, and said firm notified David L. Adams, who was the security upon Smith's bail bond, that they should no longer appear in said case, unless he wished them and employed them for that purpose. Mr. Adams was entirely good for the debt. Upon the trial the plaintiffs' suit was—solely on the ground of the want of demand of payment of the note, and of notice of non-payment to Smith. The note sued on in that case was the note offered in evidence in this. The record shown to witness is the original record and bail bond in that case. It was the Sheriff's duty to take good security. No exception was taken by the plaintiffs to the sufficiency of the security. Mr. Adams' credit was good and is now. Witness had some business transactions with Smith about the 24th of September, 1856, and was of the opinion then that he was solvent; had no reason to doubt it until his arrest under bail process.

*The presiding Judge,* by consent of parties, stated that

his recollection of the bail case, so far as the causes of plaintiffs' defeat are concerned, agreed with Mr. Jackson's.

The defendant then introduced the record of the bail case against Smith, which showed that the process issued December 27th, 1856, upon an affidavit made by Kennady, one of the plaintiffs, and that a bail bond, with D. L. Adams as security, was given two days thereafter.

Here the evidence closed, and the jury returned a verdict in favor of the plaintiffs for $762 50 principal, with $209 60 interest.

The defendant moved for a new trial, on three grounds :

1. Because L. D. Lallerstedt was allowed to testify that, in his opinion, Carmichael was insolvent on the 4th of December, 1856, he stating that his opinion was formed on what he had heard on the street and in the Bank of Augusta.

2. Because A. W. Walton was allowed to testify that his opinion, on the day of the trade, was, that Carmichael was insolvent, he stating that his opinion was formed on the fact that he had heard the night before that Carmichael was in embarrassed circumstances.

3. Because the verdict was contrary to law and evidence.

The Court granted a new trial on the 3d ground ; and this is alleged as error.

LALLERSTEDT and SHEWMAKE, for plaintiffs in error.

CUMMING, for defendant.

HARRIS, J.

[1.] Several of the questions discussed to-day were argued and decided, it seems by reference to 29th *Ga. R.* 687, when this case was here for the first time. Nothing has been now presented which can or ought to lead us to reverse or modify what was then decided.

[2.] The testimony produces a very strong conviction of a

glaring fraud having been practiced by the defendant in error in the sale to Clayton & Kennady of Carmichael's note, knowing at the time that the paper was worthless. The plaintiffs having taken, promptly, steps for the recision of the fraudulent contract, and being without fault or in laches, so far as we can discover, they were fairly entitled to recover the amount, with interest paid by them, from defendant. Entertaining, without any doubt whatever, the right of plaintiffs to this measure of justice, we think the Judge below erred in granting a new trial on the ground that the verdict was contrary to law and evidence, and accordingly reverse his decision.

Judgment reversed.